ANNA VONDERMUHLL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43379, 45076.   Promulgated January 24, 1934.

*Oliver C. Reynolds, Esq.*, and *Robert B. Cumming, Esq.*, for the petitioner.

*Frank A. Surine, Esq.*, for the respondent.

### OPINION.

SEAWELL: These proceedings, consolidated for hearing, involve redetermination of deficiencies for the respective years 1924, 1925, and 1926 of $3,324.94, $2,868.48, and $4,389.73. Petitioner received certain income as a beneficiary of two trusts during the years 1924, 1925, and 1926, which the respondent determined to be taxable, but which the petitioner claims to be exempt from tax (under section 217, Revenue Act of 1924) on the ground that the income was interest on deposits with persons carrying on the banking business paid to her, a nonresident alien not engaged in business within the United States and not having an office or place of business therein. This is the sole issue involved in these proceedings, which were consolidated for hearing, and it is common to each of the years.

The correct answer to the issue depends on the interpretation and application of the statute mentioned. The pertinent parts of the statutes (section 217 (a) (1) (A), Revenue Acts of 1924 and 1926) are as follows:

In the case of a nonresident alien individual * * * the following items of gross income shall be treated as income from sources within the United States:

(1) Interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, not including (A) interest on deposits with persons carrying on the banking business paid to persons not engaged in business within the United States and not having an office or place of business therein. * * *

The petitioner, at all times herein material, was a citizen of Switzerland and a resident of the city of Basel in that country; she was not engaged in business within the United States and had no office or place of business therein. Her husband, who had been a member of the partnership of William Iselin & Co. of New York City, died in May 1920, leaving a large estate in this country, some of which was at the time deposited with that firm. Petitioner received about 60 percent of all of said property and about July 17, 1920, transferred it to her two sons, George A. Vondermuhll and

Alfred E. Vondermuhll—a portion to each. On that date George A. Vondermuhll made a conveyance to his brother and himself as trustees of the portion of the property transferred to him by his mother, which portion is described as follows:

(a) The sum of Three Hundred Nine Thousand Seven Hundred Twenty ana 51/100 Dollars ($309,720.51) on deposit with the firm of Wm. Iselin & Company of New York, in the name of Alfred Vondermuhll, which was the property of the Grantor's father, Alfred Vondermuhll, until the time of his death and thereafter the property of said Anna Vondermuhll-Hoffman;

(b) The further sum of One Hundred Twenty-one Thousand Eight Hundred Sixty-two and 32/100 Dollars ($121,862.32) being a portion of the sum owed by the Grantor to his father, said Alfred Vondermuhll, during his life time, and after his death to his mother, said Anna Vondermuhll-Hoffman.

The conveyance recited that the property above described had been transferred to the grantor by his mother "upon the condition and understanding that there shall be paid to said Anna Vondermuhll-Hoffman during her life the net income derived from said monies and that all of said monies be on deposit with said Wm. Iselin & Company of New York at six per cent per annum interest, with power, however, to make changes in the investment of said monies." It was recited further therein that the conveyance to the trustees was made in pursuance of said understanding. In the habendum clause of the conveyance it was contracted that the trustees (himself and his brother) were to hold and manage the monies and all proceeds and reinvestments thereof in trust during the life of Anna Vondermuhll and "apply the net income thereof to her use during her life, and at her death to pay over the same to the Grantor, or if the Grantor be not then living, to such person or persons " as the grantor by will should appoint, or, if there was no will, then to the persons entitled to the property under the laws of New York. The trustees were given power "to allow the Trust Fund to be on deposit with Wm. Iselin & Co. at six per cent per annum interest or to invest the same from time to time, and as often as they see fit, resell and reinvest the proceeds either in securities * * * or in any stocks, bonds * * * or property "; and the trustees were not to be held responsible for any depreciation in investments or errors of judgment, or for any cause except willful fraud. In case of a vacancy of a trustee, the survivor should appoint; or if a vacancy of both, then the persons presumptively entitled to the next eventual estate should appoint.

And on the same date, July 17, 1920, Alfred E. Vondermuhll made a conveyance to his brother and himself as trustees of the portion of the property transferred to him by his mother, which consisted of an itemized list of United States bonds, and domestic municipal and industrial bonds, and bonds of France, Cuba, Great

Britain, and Sweden, all aggregating $527,000. The conveyance was in all material respects like that of George A. Vondermuhll mentioned above.

During the years 1924, 1925, and 1926 petitioner received from the trustees the following amounts paid to them by the parties indicated:

|  | 1924 | 1925 | 1926 |
|---|---|---|---|
| William Iselin & Co | $26,875.62 | $26,700.65 | $26,840.88 |
| A. Iselin & Co | 68.68 | 45.06 | 55.14 |
| Arthur J. Rosenthal & Co | | | 10,143.33 |
| Total | 26,944.30 | 26,745.71 | 37,039.35 |

These receipts were not derived in any way from any of the foreign bonds included in the trust funds, but the whole thereof was derived by the trustees from the parties indicated as payments made by them as interest at 6 percent per annum on funds deposited by the trustees during the years indicated with the payors named.

No part of these receipts was included in the income tax returns of petitioner or of the trustees for the several years named, and the whole thereof is involved in these proceedings.

The trustees, George A. Vondermuhll and Alfred E. Vondermuhll, are citizens and residents of the United States, as are also the partners composing the firms of William Iselin & Co., A. Iselin & Co., and Arthur J. Rosenthal & Co.

The firm of William Iselin & Co., of which the husband of petitioner was a member prior to 1920, when he died, was during the years here involved composed of seven partners; its business was that of factors and comprised many activities, such as discounting sales of current obligation accounts and guaranteeing credits, receiving assignments of accounts and consignments of merchandise and making advances against these and other collaterals, carrying deposit accounts of manufacturers, merchants and others, upon which it paid interest at the rate of 6 percent per annum to the depositors and used the funds in financing its regular business; there were about 20 of such accounts, aggregating about $1,400,000, including that of the trustees. The firm was sometimes termed financial agents or textile bankers by merchants and manufacturers.

The firm of A. Iselin & Co. during the years involved was also a partnership engaged in various activities, including buying and selling stocks, bonds and securities for its own account and for the account of others, acting as members of a syndicate underwriting such securities, dealing in foreign exchange, acting as fiscal and transfer agents, custodian of securities, receiving money for transmission, issuing letters of credit, and receiving deposits, in some cases subject to check or

draft or instructions from clients. The trustees deposited some of their funds with this firm and received from it interest thereon at the prevailing rate, under contract, as shown above.

The firm of Arthur J. Rosenthal & Co. was also a partnership during the year 1926, and was known as investment bankers, and engaged in the brokerage business, buying and selling foreign exchange and securities on its own account and for others on commission, lending and borrowing money, receiving securities for safe-keeping and collecting and remitting, or crediting the income therefrom to clients; when income was credited, it was subject to draft. Deposits were attracted and received and used with the firm's capital in its general business. Such deposits, some of which were received on time basis— 30 days to a year—were subject to draft. During the year the trustees had on deposit with the firm $200,000, and the firm paid to the trustees as interest thereon the sum of $10,143.33, which was remitted by the trustees to the petitioner as stated above.

The petitioner contends that the money paid to her was " interest on deposits with persons carrying on the banking business paid " to her " a person not engaged in business within the United States and not having an office or place of business therein " as provided in the exception (A) of section 217 (a) (1) of the Revenue Acts of 1924 and 1926, mentioned above. The respondent, on the other hand, contends that what was paid to petitioner was not " interest ", but income from a trust; that petitioner had no deposit, but if the deposits were hers they were not " with persons carrying on the banking business," and even if the persons were carrying on the banking business, they never " paid " the money to petitioner, but to certain trustees, and that petitioner's situation is exactly as that described in I. T. 1405, where the ruling is contrary to her contention. To this petitioner replies that the trustees, under all the circumstances here, were her agents and constituted merely a " conduit " through which interest due her was paid by the bankers; that the payments were made by bankers, a bank being defined as a " * * * firm, or company having a place of business where credits are opened by * * * deposit * * * subject * * * to check * * *," citing section 3407 of the Revised Statutes (Revision of 1878). *Richmond* v. *Blake*, 132 U.S. 592.

I. T. 1405, C.B. I-2, p. 149, was made with reference to section 217 (a) of the Revenue Act of 1921, which is identical with the same section of the Revenue Acts of 1924 and 1926, and is to the effect that interest on deposits credited to the account of trustees and remitted by them to a nonresident alien is not " interest on deposits with persons carrying on the banking business paid to persons not engaged in business within the United States and not having an office or place of business therein," but " the statute contemplates

that the deposit shall be made by and the interest paid to the person " who is an alien without business or office or place of business within the United States.

With reference to the contention of petitioner that the trustees were her agents and therefore deposits made by them were her deposits and payments made to them were payments to her, it is pointed out that under the trust instruments petitioner had no ownership of or control over the trust funds or how they should be invested and no control over the deposits, where or how they should be made, how long continued or how or by whom withdrawn; she had no power herself to draw on either the trust funds or income from them; she did not have any voice in filling a vacancy in the trusteeship, in case of a vacancy, and no power to remove or control a trustee in any manner. It is elemental that an agent is subject to the control of his principal. There does not appear to be any one of the requisites of agency present here. A trustee is not an agent. *Taylor* v. *Davis*, 110 U.S. 330.

Petitioner claims an exemption from the general provision of the taxing statute, and the burden, in a peculiar way, rests upon her to show that she comes within the exact provisions of the exception allowed. In *Hubbard-Ragsdale Co.* v. *Dean*, 15 Fed. (2d) 410, it is said:

\* \* \* The plaintiff claims the benefit of an exception to the general method and extent of taxing corporations. The burden is upon the plaintiff to show that it clearly comes within the terms of such exception. " In such cases, a reasonable doubt is fatal to the claim. *Prima facie* every presumption is against it. It is only when the terms of the concession are too explicit to admit fairly of any other construction that the proposition can be supported." *West Wisconsin R.R. Co.* v. *Supervisors*, 93 U.S. 595, 598.

See also *Swann* v. *United States*, 190 U.S. 143; *Cornell* v. *Coyne*, 192 U.S. 418.

Considerable doubt exists as to whether Congress intended by the words of the statute, " persons carrying on the banking business," to include persons, as disclosed by the evidence in this proceeding, in whose businesses some banking features are present as incidents thereof. It is suggested that the statute does not require in terms that such persons should be carrying on the banking business exclusively or even chiefly, or that they should be organized either as a state or a national bank. But we need not decide the point, for, if we hold that the language of the statute is sufficient to include as bankers those who paid interest to the trustees herein, nevertheless our answer to other questions involved, about which we entertain no such doubt, must exclude the petitioner from the benefits of the exception to the statute upon which she relies. For, under the language of the statute, we hold that she was not a depositor with persons carry-

ing on the banking business; that what she received was not interest, but income from the trust; that it was not paid by the bankers, if they were such, to her; and that the trustees were not agents of petitioner in their conduct of the trust.

Reviewed by the Board.

*Judgment will be entered for the respondent.*