### BENCE v. UNITED STATES.
No. 42911.

Court of Claims.
April 5, 1937.

Newell W. Ellison, of Washington, D. C. (Wm. Merrick Parker and Covington, Burling, Rublee, Acheson & Shorb, all of Washington, D. C., on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The question presented in this case is whether the amounts received by plaintiff during the taxable years 1927 to 1930, inclusive, as the sole beneficiary of a distributable trust created by the will of her husband, Percy Russell Grace, were taxable to her as income from sources within the United States in accordance with sections 213 (c) and 217 of the Revenue Act of 1926, 44 Stat. 26, 30.

The amounts received by plaintiff upon which she was held taxable consisted of dividends of a domestic corporation received by her during the taxable years from the trustee of a distributable testamentary trust created by her former husband.

Plaintiff contends that under the applicable revenue acts she is subject to income tax only on income from sources within the United States; that the amounts received by her were income from a foreign testamentary trust and not income to her from sources within the United States; that the trust was a separate entity; and that the revenue acts do not provide that income received by a nonresident alien from a foreign testamentary trust shall be treated as income from sources within the United States, nor is any such provision made in any rules or regulations prescribed by the Commissioner of Internal Revenue. Stated another way, plaintiff contends that what she received was trust income rather than dividends, and that, since the stock of the domestic corporation upon which such dividends were paid was held by the trustee and the dividends upon such stock were paid to the trustee, such dividends, if taxable at all, were taxable only to the trust and that the character of such dividends as being income from sources within the United States ceased upon their receipt by the trust.

The power of Congress to tax the income in question is conceded, but it is con-

tended that Congress did not intend to tax it in circumstances here present and that the language of the pertinent sections of the revenue acts does not reach it. We are of opinion that the income in question was taxable to plaintiff as dividends from a domestic corporation and that the Commissioner correctly denied her claims for refund on this ground. It is generally true that a trustee is not the agent of a beneficiary and that the receipt by a trustee does not amount to a receipt by the beneficiary, but this rule is subject to important exceptions, particularly with respect to federal taxation. The argument that a trustee is not an agent for a beneficiary and that the language of the revenue acts does not, in the circumstances, reach this income fails to take proper account of the structure and the underlying purpose of the revenue acts providing for the taxation of the income of the trust and also of the fact that a beneficiary of a distributable trust has an equitable, if not a legal, interest in the trust property. See Edward T. Blair v. Commissioner of Internal Revenue, 299 U.S. ——, 57 S.Ct. 330, 81 L.Ed. ——, decided February 1, 1937. The purpose to exact a tax upon all incomes of nonresident aliens from sources within the United States is clear. And it was the obvious purpose of Congress to impose such tax upon the person required by the statute to report such income and pay the tax thereon. The revenue acts provide that a trust shall pay the tax upon income which is not distributable, or distributed, to the beneficiary and that the trustee shall make a return and pay the taxes. In the case of receipt by a trust of nondistributable income from sources within the United States, the identity of such income as being from such source ceases upon its being returned and taxed to the trustee and it is not subsequently taxable to the beneficiary if and when it is distributed. In the case of a distributable trust, the statutes provide that the trustee shall deduct amounts taxable to the beneficiary and that the beneficiary shall report and pay the tax on the amounts distributed or distributable. Thus the intent to tax the entire income of the trust, either to the trustee or to the beneficiary, is clear. A distributable trust is treated by the statute as a mere conduit through which the income passes to the beneficiary who is made taxable thereon and, in instances of the character with which we are here concerned, the amounts received by the beneficiary retain their identity as dividends and as income from sources within the United States until their receipt by the beneficiary who, under the statute, is made taxable thereon. In other words, the receipt by the trust of money distributable to a beneficiary is for the purpose of taxation receipt by the beneficiary. In Freuler, Administrator, v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 310, 78 L.Ed. 634, the court, in construing section 219 of the Revenue Act of 1921 (40 Stat. 246) and similar provisions (section 219) of the Revenue Act of 1926 (44 Stat. 32) said: "Plainly the section contemplates the taxation of the entire net income of the trust. Plainly, also, the fiduciary, in computing net income, is authorized to make whatever appropriate deductions other taxpayers are allowed by law. The net income ascertained by this operation, and that only, is the taxable income. This the fiduciary may be required to accumulate, or, on the other hand, he may be under a duty currently to distribute it. If the latter, then the scheme of the act is to treat the amount so distributable, not as the trust's income, but as the beneficiary's. But as the tax on the entire net income of the trust is to be paid by the fiduciary or the beneficiaries or partly by each, the beneficiary's share of the income is considered his property from the moment of its receipt by the estate. This treatment of the beneficiary's income is necessary to prevent the possibility of postponement of the tax to a year subsequent to that in which the income was received by the trustee. If it were not for this provision the trustee might pay on part of the income in one year and the beneficiary on the remainder in a later year. For the purpose of imposing the tax the act regards ownership, the right of property in the beneficiary, as equivalent to physical possession. The test of taxability to the beneficiary is not receipt of income, but the present right to receive it."

See, also, Helvering v. Butterworth et al., Trustees, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365.

If it be assumed that the amounts received by plaintiff during the years in question were not dividends within the meaning of section 217 (a) (2) of the Revenue Act of 1926 (44 Stat. 30) when received by plaintiff, they were, nevertheless, taxable to her as income from sources within the United States since such amounts were paid on stock of a corporation during business in the United States and were, therefore, derived from sources within the United States.

In Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S.Ct. 50, 52, 79 L.Ed. 211, the court said: "The general object of this act is to put money into the federal treasury; and there is manifest in the reach of its many provisions an intention on the part of Congress to bring about a generous attainment of that object by imposing a tax upon pretty much every sort of income subject to the federal power. Plainly, the payment in question constitutes income derived from a source within the United States; and the natural aim of Congress would be to reach it."

The case of Vondermuhll v. Helvering, 64 App.D.C. 137, 75 F.(2d) 656, relied upon by the plaintiff, is distinguishable on the facts.

Our conclusion that plaintiff was properly taxed upon the amounts received by her in the years involved presents the further question whether she may recover any portion of the net tax determined by the Commissioner for the years 1927, 1928, and 1929 on account of her failure to receive at the hands of the Commissioner the full benefit of the authorized deductions for income taxes paid to Great Britain. Neither the amount of taxes so paid to Great Britain in each of the years 1927 to 1929, inclusive, nor the legality of the deduction thereof is in controversy. The only question is whether the claims for refund for these years, when acted upon by the Commissioner, were sufficient as originally made and as amended by the filing of written receipts for the taxes paid after and pursuant to a conference with the Commissioner on July 18, 1932, as disclosed in finding 6. In the circumstances of this case we think the claims were made sufficient for the purpose of the allowance and suit as a result of the consideration and discussion of the claims between the Commissioner and the plaintiff on July 18, 1932, with specific reference to the allowable deductions for income taxes paid to Great Britain and the filing by plaintiff with the Commissioner, as a part of its claims, of the written receipts for the taxes paid to Great Britain in each of the years 1927 to 1930, inclusive. The Commissioner was not misled. He had all the information that he desired and all that plaintiff could furnish and the demand of plaintiff for the refund of such amounts as might result from these conceded deductions was evidenced in written form before the Commissioner acted upon the claims. In addition, plaintiff and the Commission-

er, during consideration of the claims when this question was raised and discussed, considered and treated the filing of the written receipts by plaintiff as being sufficient to bring these items into her claims then under consideration as a ground for refund in the years involved. The Commissioner allowed the deductions in his computations of the tax liability but refused to refund the overpayments resulting from such deductions for 1927, 1928, and 1929. For 1930 the Commissioner allowed the entire deduction claimed of $4,848.67 in determining the net tax of $575.19 paid for that year. There has, therefore, been no overpayment for that year.

Entry of judgment for the years 1927, 1928, and 1929 will be withheld pending the filing by the parties of a computation showing the amounts of the overpayments for those years resulting from the deductions of taxes paid to Great Britain. It is so ordered.