ISIDRO MARTIN-MONTIS TRUST, F. B. HUBACHEK, JR., TRUSTEE, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5380–78, 7847–78, 7932–78.      Filed December 11, 1980.

*Frank T. Foster* and *Thomas E. Chomicz*, for the petitioners.
*Harmon Dow*, for the respondent.

---

[1]Cases of the following petitioners are consolidated herewith for purposes of trial, briefing, and opinion: Soledad Portago Trust U/D 11/14/45, docket No. 7932–78; Soledad Portago Trust U/D 3/10/51, docket No. 7847–78.

OPINION

HALL, *Judge:* Respondent determined deficiencies in income tax as follows:

| Petitioner | Year | Deficiency |
| --- | --- | --- |
| Isidro Martin-Montis Trust | | |
| (Docket No. 5380–78) ........................ | 1974 | $1,884.26 |
| | 1975 | 714.72 |
| | 1976 | 70.37 |
| Soledad Portago Trust | | |
| U/D 11/14/45 (Docket No. 7932–78) ...... | 1974 | 1,269.75 |
| | 1975 | 827.09 |
| | 1976 | 102.75 |
| Soledad Portago Trust | | |
| U/D 3/10/51 (Docket No. 7847–78) ....... | 1974 | 2,027.28 |
| | 1975 | 1,065.00 |
| | 1976 | 371.57 |

The sole issue for decision is whether interest on U.S. bank deposits, which interest is received by a nonresident alien beneficiary as distributions from a U.S. trust which is not a grantor trust, is U.S. source income within the meaning of section 861.[2]

This case was submitted fully stipulated.

The Isidro Martin-Montis Trust (Martin-Montis Trust), Soledad Portago Trust U/D 11/14/45 (Portago Trust–1945), and Soledad Portago Trust U/D 3/10/51 (Portago Trust–1951) are all trusts administered under the laws of the State of Illinois. The Martin-Montis Trust and the Portago Trust–1945 were established in 1945. The Portago Trust–1951 was established in 1951. These petitioners are hereinafter collectively referred to as the "trusts."

The grantor of each of the trusts was Olga Martin-Montis, a citizen of the United States. The only beneficiary of the Martin-Montis Trust was Isidro Martin-Montis, a nonresident alien, who was a resident of Switzerland during the years in issue. The only beneficiary of the Portago Trust–1954 and the Portago Trust–

---

[2] All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

1951 was Soledad Portago, also a nonresident alien who was a resident of Switzerland during the years in issue.

At all times material to this case, F. B. Hubachek, Jr., a resident of Illinois, was the trustee of the three trusts. Under the trust instruments establishing the trusts, all control, management rights, and powers were vested in the trustee.

The trustee deposited funds belonging to each of the trusts into interest-bearing accounts with U.S. banks. These accounts generated interest income in the following amounts for the years stated:

| Trust | 1974 | 1975 | 1976 |
|---|---|---|---|
| Martin-Montis Trust | $37,685.25 | $14,294.38 | $1,407.34 |
| Portago Trust–1945 | 25,384.81 | 16,541.84 | 2,054.90 |
| Portago Trust–1951 | 40,545.67 | 21,299.99 | 7,431.26 |

The above-stated amounts were distributed by the trustee to the trusts' respective beneficiaries in the years the trusts received them. All of this interest income was investment income not effectively connected with a trade or business within the United States.

Each of the trusts timely filed a U.S. Fiduciary Income Tax Return (Form 1041) for each of the years in issue. In addition, each of the trusts timely filed a U.S. Annual Return of Income Tax to be Paid at Source (Form 1042) together with a Form 1042S, Income Subject to Withholding under Chapter 3, Internal Revenue Code, for each of the years in issue. The interest income distributed to the beneficiaries in 1974, 1975, and 1976 was separately stated by the trusts on the Forms 1042S with the notation "Exempt Interest on Bank Deposits." The trustee did not withhold any income tax under section 1441 with respect to the interest income distributed to the beneficiaries during the years in issue.

In his statutory notices, respondent determined that the interest earned on the U.S. bank deposits and distributed to the nonresident alien beneficiaries was income from sources within the United States and was subject to income tax and withholding of tax. Accordingly, respondent determined deficiencies representing the tax required to be withheld at source by the trustee for each of the years in issue.

Section 871(a)(1)(A) provides that a nonresident alien individual, not engaged in a trade or business in the United States, is

subject to a 30-percent tax on interest received by him from sources within the United States.[3] Section 1441 requires a trust fiduciary to withhold the tax on U.S. source interest income distributed to nonresident alien beneficiaries.

Section 861 specifically excludes from gross income from sources within the United States interest earned on U.S. bank deposits received by a nonresident alien.[4] This exclusion originated in the Revenue Act of 1921, sec. 217(a)(1)(A), 42 Stat. 227, 243. The original purpose of the exclusion was to encourage bank deposits in the United States by nonresident aliens and generally to aid foreign and international trade. See Hearings Before the Senate Finance Committee on H.R. 8245, 76th Cong., 1st Sess. 65 (1921). The current statutory provision, section 861, was enacted in its present form by section 103(a) of the Foreign Investors Tax Act of 1966, Pub. L. 89–809, 80 Stat. 1539, 1547. Congress at that time was questioning the rationale of permitting U.S. source interest received by a nonresident alien to escape U.S. taxation. S. Rept. 1707, 89th Cong., 2d Sess. 10 (1966), 1966–2 C.B. 1095, 1066. As a result, Congress decided to repeal this statutory exclusion altogether, effective December 31, 1972. Foreign Investors Tax Act of 1966, sec. 102(a)(1), 80 Stat. 1541. The reason for delaying the repeal was that it was feared that

[3]Sec. 871(a)(1)(A) provides:

(a) INCOME NOT CONNECTED WITH UNITED STATES BUSINESS—30 PERCENT TAX.- -

(1) INCOME OTHER THAN CAPITAL GAINS. —There is hereby imposed for each taxable year a tax of 30 percent of the amount received from sources within the United States by a nonresident alien individual as—

(A) interest (other than original issue discount as defined in section 1232(b)), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, and other fixed or determinable annual or periodical gains, profits, and income,

The tax rate applicable to the present case is reduced to 5 percent by operation of art. VII of the United States-Swiss Confederation Income Tax Convention, May 24, 1951, 1955-2 C.B. 814.

[4]Sec. 861 provides in pertinent part:

(a) GROSS INCOME FROM SOURCES WITHIN UNITED STATES. — The following items of gross income shall be treated as income from sources within the United States:

(1) INTEREST. —Interest from the United States, any Territory, any political subdivision of a Territory, or the District of Columbia, and interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, not including—

(A) interest on amounts described in subsection (c) received by a nonresident alien individual or a foreign corporation, if such interest is not effectively connected with the conduct of a trade or business within the United States,

\* \* \* \* \* \* \*

(c) INTEREST ON DEPOSITS, ETC. —For purposes of subsection (a)(1)(A), the amounts described in this subsection are—

(1) deposits with persons carrying on the banking business.

an immediate repeal would have a substantial adverse effect on our balance of payments. S. Rept. 1707, *supra.* Subsequently, Congress delayed the 1972 elimination of the exclusion, and in 1976 decided to make the exclusion permanent. Tax Reform Act of 1976, sec. 1041, 90 Stat. 1634.

In 1954 Congress enacted section 652(b), which provides that in the case of a simple trust which distributes income annually, the income received by the beneficiary of the trust retains the same character in the hands of the beneficiary as in the trust.[5] This is sometimes called the conduit theory of trust taxation.

Petitioners contend that, under the conduit theory, the trust income distributed to the nonresident aliens, retained in their hands its same character as the income possessed in the hands of the trusts. Although respondent agrees with petitioners that the character of the income in the hands of the nonresident alien beneficiary was interest income, and that the source was U.S. banks, respondent contends that the statute, properly construed, requires, in addition, both control of the deposits by the beneficiaries and receipt of the interest directly by the beneficiaries before section 861 would apply at the beneficiary level.

Respondent relies primarily on *Vondermuhll v. Commissioner,* 29 B.T.A. 895 (1934), affd. 75 F.2d 656 (D.C. Cir. 1935). In *Vondermuhll,* the taxpayer was a Swiss citizen who transferred property to her two sons, both U.S. citizens, who in turn conveyed the property to themselves as trustees for the benefit of their mother. The trust funds were deposited with certain U.S. companies, assumed for the purposes of the opinion to be bankers, and these companies paid interest to the trustees, who distributed the interest to their Swiss mother. The mother, a nonresident alien, sought to come within section 217(a)(1)(A) of the Revenue Acts of 1924 and 1926 (which was similar to current section 861). Respondent, in that case, contended that what was paid to the taxpayer was not "interest," but income from a trust; that the taxpayer had no deposits, but if the deposits were hers they were not "with persons carrying on the banking business"; and even if the persons were carrying on the banking business, they never "paid" the money to the taxpayer, but to certain trustees. To this, the taxpayer replied in part that the trustees

---

[5]Sec. 662(b) provides a similar provision for estates and complex trusts.

were her agents and constituted merely a "conduit" through which interest due her was paid by the bankers. The Court found that the taxpayer had no ownership or control over the trust funds or how they should be invested. The Court concluded (29 B.T.A. at 899–900):

if we hold that the language of the statute is sufficient to include as bankers those who paid interest to the trustees herein, nevertheless our answer to other questions involved, about which we entertain no such doubt, must exclude the petitioner from the benefits of the exception to the statute upon which she relies. For, under the language of the statute, we hold that she was not a depositor with persons carrying on the banking business; that what she received was not interest, but income from the trust; that it was not paid by the bankers, if they were such, to her; and that the trustees were not agents of petitioner in their conduct of the trust.

The Court of Appeals for the District of Columbia affirmed. This case, according to respondent, established the requirement that the nonresident alien have investment control and receive the interest directly to come within the statutory exemption. Petitioners assert that the case turns primarily on the conclusion that the interest received by the beneficiary lost its identity as U.S. bank interest and was simply trust income to her, and that the embodiment in the statute of the conduit theory of trust income in 1954 made this case obsolete by ascribing to distributed trust income, at the beneficiary level, the character of such income in the hands of the trustee.

Respondent's primary contention is that the purpose of section 861 (and its predecessors) is to encourage deposits by nonresident aliens in U.S. banks, and therefore, that the nonresident alien and not the U.S. taxpayer must have control over the deposits and directly receive the interest. Funds which are not foreign controlled funds are not within the intent of the section, according to respondent. Hence, respondent published Rev. Rul. 59–245, 1959–2 C.B. 172, in which he states that when a nonresident alien (not engaged in business in the United States) is treated for any reason as the owner of a trust under section 671, interest earned by the trust on bank deposits in the United States does not constitute interest from sources within the United States in the hands of such nonresident alien under section 861 because the nonresident alien is deemed to own the assets of the trust and to have directly received the interest earned thereon. However, if the nonresident alien is not considered the owner of the trust assets, he is not within the

purview of section 861(a)(1)(A) because he is not the depositor of the trust funds and "the interest therefore is not payable in the first instance to him but to the trustee."

Petitioners counter that the distinction between control and lack of control has nothing to do with the economic purpose behind the exemption which is to benefit the U.S. balance of payments and attract foreign capital to the United States. The creation of a U.S. trust for a nonresident alien which deposits funds in U.S. banks benefits the U.S. balance of payments situation just as much as the creation of a grantor trust which deposits funds in a U.S. bank. There is nothing to stop a U.S. trustee from investing funds abroad, which funds would give rise to foreign source income, if, for example, tax benefits on U.S. bank interest is removed.

Petitioners point out that large U.S. banks can take funds deposited in the U.S. domestic branch and place them in one of their foreign branches. Such interest would be foreign source income under section 861(a)(1)(F). In such a case, the nonresident alien beneficiary obtains the exemption from tax, the bank has no real cash out-flow as a worldwide institution, and the only ones who suffer are domestic borrowers who might have more availability to funds if the funds had simply remained in the U.S. domestic bank. Even without section 861(a)(1)(F), the trustee can deposit the assets in foreign banks, thereby making the income on the assets foreign source income. The latter situation runs directly counter to the purpose of the exemption for interest on U.S. deposits.

The domestic trustee of a trust for the benefit of a nonresident alien is going to take the beneficiary's tax burden into account in making investments. Whether the trust corpus originally came from foreign controlled funds or U.S. controlled funds, once it is in the trustee's hands, particularly a simple trust as in the present case, the trustee is going to invest the trust corpus with the beneficiary's tax situation in mind.

Respondent also relies on the argument that the interest must be received *directly* by the nonresident alien in the first place, and not indirectly received as a trust distribution. In other words, while respondent agrees that the interest remains interest from U.S. banks in the beneficiaries' hands, under the conduit theory, he does not agree that it is "received by a nonresident alien" as provided in section 861(a)(1)(A) (and,

incidentally, in section 871(a)(1)(A)). This position, however, appears to run contrary to Rev. Rul. 68–621, 1968–2 C.B. 286. In that ruling, decedent was a nonresident alien, and the estate was an ancillary administration in the United States for the purpose of assembling decedent's assets in the United States and transmitting them or the proceeds from them to nonresident alien beneficiaries. The estate was described as a nonresident alien estate present in the United States. Among the assets marshalled by the estate were stocks in U.S. corporations which were sold, thereby producing capital gain. Section 871(a)(2) provides, generally, that in the case of a nonresident alien individual present in the United States for a period or periods aggregating 183 days or more during the taxable year, net capital gains from sources within the United States (and not effectively connected with a trade or business in the United States) are subject to a 30-percent tax. The ruling concluded that the net gains on the sale of the U.S. stock were includable in the gross income of the estate, but the estate was entitled to a deduction under section 661 for amounts distributed to the beneficiary (and not in excess of the estate's distributable net income). However, the net capital gains were not includable in the gross income of the nonresident alien beneficiaries because, although the gains retained their same character in the hands of the beneficiaries as in the hands of the estate under section 662(b), the beneficiaries had not been present in the United States for 183 days or more during the taxable year. In other words, the character of the net gains as includable in income did not carry through to the beneficiaries, but a fresh look, a beneficiary level characterization, resulted from the conduit theory of taxation. The presence of the estate in the United States did not flow through the nonresident beneficiary.[6]

In our case, the interest was ultimately received by the nonresident alien (as it must be to be includable in gross income under section 871(a)(1)), and under the rationale of respondent's

---

[6]See also *Bence v. United States*, 84 Ct. Cl. 605, 18 F. Supp. 848 (1937), wherein the Court of Claims held that dividend income from U.S. corporations retained its character as U.S. source income although it was received by the taxpayer, a nonresident alien, as the beneficiary of a foreign trust. The court stated that "receipt by the trust of money distributable to a beneficiary is for purposes of taxation, receipt by the beneficiary." See sec. 1.652(b)–1, Income Tax Regs., which states that "the tax treatment of amounts * * * depends upon the beneficiary's status with respect to them, not upon the status of the trust."

ruling, the fact that it was received in the first instance by the trust does not prevent the operation of the exclusion from U.S. source income in the hands of the trust beneficiaries. Respondent cites no rationale or basis in statutory history for the position he takes that the beneficiary must receive the interest directly from the bank (or be deemed to receive it directly from the bank) in order for the exclusion to apply. Under the circumstances, we conclude that the exclusion applies whether the nonresident alien receives the interest directly or indirectly as a distribution from a trust or estate.

Nothing in the statutory wording supports respondent's claimed exemption to the normal conduit rules of trust taxation, and the policy considerations underlying the interest exemption seem to be just as well served by keeping within the United States interest-bearing trust funds beneficially owned by nonresident aliens, as by attracting new such funds here. We, therefore, cannot agree with respondent's position. The case on which respondent relies antedated section 652 and does not discuss or deal with the nonstatutory conduit theory of trust taxation, which represents a later development in the tax law.

For the reasons stated above,

*Decisions will be entered for the petitioners.*