WILLIAM EDWARD MUIR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 108351, 2704, 5549, 8204, 11573.

Promulgated February 17, 1948.

*Charles M. Cork, Esq.*, for the petitioner.
*Newman A. Townsend, Jr., Esq.*, and *F. L. Van Haaften, Esq.*, for the respondent.

---

MURDOCK, *Judge*: The Commissioner has determined the following deficiencies in income tax of the petitioner:

| Docket No. | Year | Deficiency | Docket No. | Year | Deficiency |
|---|---|---|---|---|---|
| 108351 | 1937 | $3, 267. 08 | 8204 | 1941 | $5, 223. 28 |
| 2704 | 1938 | 2, 061. 60 | 11573 | 1942 | 6, 516. 44 |
| 5549 | 1939 | 2, 158. 37 | | 1943 | 6, 686. 92 |
| | 1940 | 3, 329. 66 | | | |

The stipulation is adopted as the findings of fact. The only issue presented for decision by the petitioner is whether the Commissioner erred in each year by adding to the petitioner's income $8,000 representing dividends paid on stock of the Bibb Manufacturing Co. owned by the trustees of the estate of Francis Muir, of which the petitioner and his mother were income beneficiaries.

The petitioner is a nonresident alien who resides in England. His returns for the periods here involved were filed with the collector of internal revenue for the district of Maryland.

The petitioner is the son of Francis and Ellen Margaret Muir. Francis died a resident and citizen of England. His will, which was duly admitted to probate in England in 1912, named his wife, the petitioner, and a solicitor as executors and trustees. The solicitor died prior to May 7, 1932, after which the other two continued to administer the estate and trust as surviving trustees. The will of Francis contained two paragraphs as follows:

### Paragraph 10

I direct my trustees out of the income or annual produce of my residuary trust fund to pay to my said wife an annuity of one thousand eight hundred pounds during her life for her separate use without power of anticipation such annuity to commence from my death and be paid by equal quarterly payments the first payment to be made at the expiration of three calendar months after my death.

### Paragraph 11

Subject to the foregoing annuity of one thousand eight hundred pounds to my said wife, I direct my trustees to stand possessed of the whole of my residuary trust fund upon trust during the lifetime of my said wife to pay the income or annual produce thereof to my said son, William Edward and from and after the death of my said wife in trust as to the whole of my residuary trust fund for my said son, William Edward, absolutely.

Ellen continued to be a citizen of England, but resided in the United States for many years prior to her death in 1944.

The trustees under the will of Francis acquired a number of shares of stock of Bibb Manufacturing Co., a domestic corporation, hereinafter referred to as Bibb, which the decedent owned at the time of his death. The three trustees directed Bibb in 1919 to pay Ellen, then residing in the United States, $4,000 annually out of dividends on the

Bibb stock owned by the trustees. Bibb was authorized to increase those payments to $6,000 in 1929 and to $8,000 in 1932. The last instruction, dated May 7, 1932, and signed by Ellen and the petitioner, was as follows:

The undersigned surviving trustees under the will of Francis Muir, deceased, hereby authorize and direct you to increase the quarterly payments which you have heretofore made to Mrs. Ellen Margaret Muir out of any dividends payable or to become payable upon the holdings of the undersigned as such trustees of shares of stock in the Bibb Mfg. Co. from the sum of Fifteen Hundred Dollars ($1,500.00) per quarter in each year, as directed in our order on file with you dated March 30, 1929, to the sum of Two Thousand Dollars ($2,000.00) per quarter each year, so that from and after this date you pay to her out of such dividends the sum of Two Thousand Dollars ($2,000.00) per quarter each year; and we hereby agree that her receipts for such Two Thousand Dollars ($2,000.00) per quarter shall be good and sufficient discharges to you for such portions of the dividends in respect to the said shares which are payable to us as trustees.

The Bibb Manufacturing Co. made the payments to Ellen as instructed by the trustees. The following table shows the total dividends paid by Bibb on stock owned by the trustees for the years 1937 to 1943, inclusive:

| | | | |
|---|---|---|---|
| 1937 | $60,931 | 1941 | $74,992 |
| 1938 | 37,496 | 1942 | 84,366 |
| 1939 | 37,496 | 1943 | 74,992 |
| 1940 | 37,496 | | |

Bibb remitted to the trustees, through a New York bank, the amount of dividends paid each year on the stock owned by the trustees, after deducting the withholding tax, the amount paid to Ellen, and other miscellaneous disbursements authorized by the trustees.

The trustees did not file tax returns for any of the years involved herein, but the petitioner reported on his returns the total dividends received by the trustees from Bibb, less amounts paid to Ellen. The following explanation from the petitioner's return for 1937 is typical of his other returns.

*Income from Dividends*

The Estate of Francis Muir received from the Bibb Manufacturing Company, Macon, Georgia $60,931.00 as dividends on common stock held by it. Of this amount $8,000.00 was paid to Mrs. E. M. Muir, Savannah, Georgia, as one of the beneficiaries of that estate. The remainder of the dividends amounting to $52,-931.00 was distributed to the taxpayer by the Estate,

The Bibb Manufacturing Company paid direct to the taxpayer on common stock owned by him $5,746.00 as dividends making a total of $58,677.00 received by the taxpayer in dividends from a domestic corporation, which is all of his income from sources within the United States.

The petitioner contends that the arrangement under which the Bibb dividends were paid to his mother in payment of the annuity provided for her in the will of Francis was purely for convenience, since his mother was residing in this country and he was residing in Eng-

land and her annuity could be paid more easily from funds in this country than from foreign funds of the trust, and no thought was given to tax avoidance. It is obvious, however, that the arrangement was beneficial taxwise, since the mother, as a resident, would be taxable on the amount distributable to her, regardless of its source; whereas the petitioner, a nonresident alien, would be taxable only on income from sources within the United States. Regulations 111, sec. 29.211–1; sec. 211, I. R. C., and relevant revenue acts. The petitioner also claims that the Commissioner accepted a number of earlier returns with full knowledge of the facts. We do not deem any of those circumstances material, and we mention them only to make clear that they have not been overlooked.

The foundation of the petitioner's case is that he did not actually receive the $8,000 of dividends in question, since they were paid by Bibb directly to his mother upon written authorization of the surviving trustees. Regardless of how realistic or persuasive that argument might be, standing alone, nevertheless, this question must be considered with relation to the entire scheme of Federal income tax.

It was no doubt natural and convenient for the trustees of this trust, set up in England, to arrange that Ellen, who was residing in the United States and was to receive a relatively small amount of the trust income, should receive her share out of the dividends of a domestic corporation. No funds would then have to be transferred from England to pay her, and a smaller part of the Bibb dividends would have to be sent to England for distribution to the petitioner. They could continue that arrangement as long as they saw fit, without any right on the part of the Commissioner of Internal Revenue to object. However, the tax liabilities of the beneficiaries of this trust must be determined by referring to the terms of the trust instrument and to the provisions of the Internal Revenue Code, rather than to the mechanics of the method chosen by the trustees in distributing the income of the trust, in the absence of some more compelling reason than mere convenience of the trustees.

The petitioner properly admits that all of the income of the trust must be considered to have been received by the trust, actually or constructively, even though a part of that income may have gone directly from the source to a beneficiary. It is obvious that this trust had income from sources within and from sources without the United States. All of the income of the trust from all sources was distributable to these two persons. Ellen, being a resident alien, was taxable on all she received, regardless of its source, while the petitioner, a nonresident alien, was taxable only on the part of his distributable share which came from sources within the United States. The source of the distributions is thus material in computing the tax liability of the petitioner. The question is, How much of the income from sources within

the United States must be deemed to have been received by each? The trust instrument contains no specific provision to aid in the solution of that problem. It merely provides that £1,800 of the income of the trust shall go to Ellen annually and all of the remainder shall go to the petitioner. It does not provide that any particular income of the trust shall be used to pay either one. Ellen could demand payment of her share without being limited either to domestic or to foreign income of the trust. Some method, applicable generally in such circumstances, which is fair and just to the taxpayer and to the tax collector must be used to allocate the income from sources within the United States between the two beneficiaries. The petitioner and his mother were both beneficiaries and trustees. They derive no power either from the will, from the Internal Revenue Code, or from any other source to make an allocation which would be binding upon the Commissioner for tax purposes, especially where their only justification was their own convenience.

Situations not distinguishable in principle confronted this Court and the appellate courts in earlier cases upon which the respondent relies. The trust instruments in some of those cases provided that a certain portion of the trust income was to go to one beneficiary and a certain portion to another, without regard to the kind or source of that income. The trusts had both taxable and tax exempt income. It was held that the taxable income should be prorated so that the amount allocated to each beneficiary should bear the same relation to the total distributable taxable income of the trust as his total distributable share of the trust income bore to the total distributable income of the trust. See *Estate of Richard E. Traiser*, 41 B. T. A. 228; *Charles F. Grey*, 41 B. T. A. 234; affd., 118 Fed. (2d) 153; *J. Cornelius Rathborne*, 37 B. T. A. 607; affd., 103 Fed. (2d) 301; *Georgie W. Rathborne*, 37 B. T. A. 936; and cases therein cited. See also I. T. 3231, 1938–2 C. B. 147. Such an allocation is required by statute in some cases (secs. 163 (b), 23 (1), but that circumstance is no reason why its use is not appropriate in situations not expressly covered by that statutory provision, but to which the rule is equally applicable. Indeed, its adoption by Congress recommends its use in similar situations. It is not only fair and equitable to all, but also it provides a uniform rule necessary to eliminate administrative difficulties and absurd results. Examples readily come to mind. It happens here that the petitioner and his mother, who were the sole surviving trustees and sole beneficiaries during the taxable years, acted harmoniously. But, if the mother had left the United States and resumed her residence in England, she could not be taxed against her will upon the theory that her full distributable share of the trust income represented income from within the United States. In short, where a trust instrument fails to designate the source of distributions and the trustees, solely for convenience,

allocate taxable income to one beneficiary and nontaxable income to another, their action will have no effect upon the tax liability of the beneficiary.

The relation of the trust income from sources within the United States to total income from all sources must be known in order to make a proper allocation of domestic and foreign income between the two beneficiaries in accordance with the rule laid down in the cited cases. Such information is peculiarly within the knowledge of the petitioner, who received all of the income of the trust and was also a trustee. He was the sole surviving trustee at the time of the trial. The Commissioner contends that such information is not readily available to him, and the stipulation expressly states that such information has never been given the Commissioner either by the petitioner, his counsel, or any representative of the trust, although advised by the respondent of their right to furnish such information. The Commissioner, although urging the propriety of an allocation, has been unable to make one due to the failure of the petitioner to supply the necessary information. Cf. *Sax Rohmer*, 5 T. C. 183; affd., 153 Fed. (2d) 61; certiorari denied, 328 U. S. 862. He therefore has allocated all of the income from sources within the United States to the petitioner, although that result is obviously wrong. Another court, faced with a somewhat similar difficulty, has required the Tax Court to make some allocation bearing most heavily, if necessary, upon the petitioner, who had the burden of proof. *Cohan* v. *Commissioner*, 39 Fed. (2d) 540. It is therefore held that $100 of the income from sources within the United States is allocable to Ellen and the remainder to the petitioner, with the understanding that if the petitioner can demonstrate to the satisfaction of the Commissioner that the allocation should be more favorable to the petitioner, the Court will approve any such allocation agreed to by the parties.

The Commissioner has raised an alternative issue in his answer, under which he contends that, if less than all of the $8,000 of Bibb dividends is allocated to the petitioner, then the credits allowed for tax paid at the source should be reduced, since the petitioner has claimed and been allowed credit for the withholding tax on the entire Bibb dividends on the stock held by the trust. The facts on this issue have been fully stipulated. Section 143 (d) provides that income upon which any tax is required to be withheld at the source shall be included in the return of the recipient of such income, but any amount of tax so withheld shall be credited on the return of the recipient. Obviously, the petitioner is entitled only to credit on tax withheld on the income properly taxable to him, and some adjustment will have to be made in this case.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

Black, *J.*, dissenting: The majority opinion sustains the Commissioner in taxing to petitioner in each of the taxable years $8,000 of income save for an arbitrary allocation of $100 which the majority opinion, under the doctrine of the *Cohan* case, allocates to Ellen Muir, which petitioner did not receive and had no right to receive. I know of no law which either requires or countenances such a result and, therefore, I dissent.

In each of the taxable years there was paid to Ellen Margaret Muir, mother of petitioner, by the Bibb Manufacturing Co. of Macon, Georgia, the sum of $8,000 in dividends on stock owned by the Francis Muir trust. These dividends were paid to Mrs. Muir pursuant to an order to the corporation signed by Ellen Margaret Muir and William Edward Muir, as trustees under the will of Francis Muir, deceased, within the exercise of their lawful powers. At the time this order was signed in 1932, the other trustee was dead. This order contains, among others, the following provisions:

* * * so that from and after this date you pay to her out of such dividends the sum of Two Thousand Dollars ($2,000.00) per quarter each year; and we hereby agree that her receipts for such Two Thousand Dollars ($2,000.00) per quarter shall be good and sufficient discharges to you for such portions of the dividends in respect to the said shares which are payable to us as trustees.

Respondent makes no point that the $8,000 paid in each of the taxable years to Mrs. Muir was not the substantial equivalent of the annuity provided by the will at the rate of exchange which prevailed in each of the taxable years. Both parties seem to agree on that fact. No issue is raised as to it. In each of the taxable years Ellen Margaret Muir returned this $8,000 for taxation and paid taxes on it. What more does the law require?

Section 212 of the Revenue Act of 1936 and similar provisions in later revenue acts define the gross income of a nonresident alien. This section contains the following provision:

(a) General Rule.—In the case of a nonresident alien individual gross income includes only the gross income from sources within the United States.

The applicable regulation is printed in the margin.[1] It seems clear that petitioner, who was a nonresident alien, has complied fully with the foregoing provisions of the statute and the applicable regulation. According to the facts which have been stipulated, the only income which he had from sources within the United States during the taxable years was from dividends on some stock which he individually

[1] Sec. 29.211–1 [Regulations 111]. Taxation of Aliens in General.—For the purposes of chapter 1 alien individuals are divided generally into two classes, namely, resident aliens and nonresident aliens. Resident aliens are in general taxable the same as citizens of the United States, that is, a resident alien is taxable on income derived from all sources including sources without the United States. Nonresident aliens are taxable only on income from sources within the United States. For classification of nonresident aliens, see section 29.211–7.

owned in the Bibb Manufacturing Co. and from dividends of the same manufacturing company which he received as one of the beneficiaries of the testamentary trust. But, notwithstanding the stipulated facts show that petitioner has returned and paid tax on all this income which he received, the majority opinion holds that some kind of an allocation must be made to him of income which he did not receive and which he had no right to receive. The majority opinion does this upon the authority of certain cited cases which, in my opinion, have no application to the facts of the instant case. These cases deal with the allocation of taxable income and tax exempt income between the beneficiaries of a domestic trust and other related subjects.

The trust in the instant case was a nonresident alien trust which had no exempt income from sources in the United States and claims none. All of its income from sources within the United States was taxable and, as I have already emphasized, the beneficiaries who were entitled to receive it have returned it all for taxation in the proportions that they received it and have paid taxes thereon.

The cases cited in the majority opinion do not deal at all with the question of whether the source of a nonresident alien trust beneficiary's income from "sources within the United States" is different from that which the undisputed facts show to be the actual source. Under the law as it exists by reason of the provisions of section 162 of the code, the testamentary trust was but a conduit for the distribution of the taxable dividends of the Bibb Manufacturing Co. to the two beneficiaries of the trust—$8,000 to Mrs. Muir and the remainder to petitioner. *Bence* v. *United States*, 18 Fed. Supp. 848. Under the doctrine of the *Bence* case, Mrs. Muir was clearly taxable on the $8,000 dividends which she received. If she was taxable on it, it requires no argument that petitioner is not taxable on the same income.

Under section 212, to which I have already made reference, petitioner would only have to return as part of his gross income "from sources within the United States" the portion of the dividends which he received. He has done that, and, because the majority opinion requires him to do more, I respectfully dissent.

TYSON and JOHNSON, *JJ.*, agree with this dissent.