### MUIR et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 6054.

United States Court of Appeals, Fourth Circuit.

Argued April 21, 1950.

Decided June 8, 1950.

Charles M. Cork, Macon, Ga. (C. Baxter Jones, Macon, Ga., on brief), for petitioners.

S. Walter Shine, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General; Ellis N. Slack, Helen Goodner and Sumner M. Redstone, Special Assistants to the Attorney General, on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This appeal involves five cases consolidated for trial in the Tax Court which held, three members dissenting, that there were deficiencies in the income taxes for the years 1937-1943 inclusive of William Edward Muir who died while the cases were pending below. There is no dispute as to any material fact.

The taxpayer, an alien who resided in England, was the son of Francis and Ellen Margaret Muir. His father's will was duly admitted to probate in England in 1912 and he, his mother and a solicitor were designated therein as executors and trustees. The solicitor died prior to May 7, 1932, after which time the others continued to administer the estate and trust under the laws of England. The will contained two provisions which are pertinent to this case:

(10) "I direct my trustees out of the income or annual produce of my residuary trust fund to pay to my said wife an annuity of one thousand eight hundred pounds during her life for her separate use without power of anticipation such annuity to commence from my death and be paid by equal quarterly payments the first payment to be made at the expiration of three calendar months after my death."

(11) "Subject to the foregoing annuity of one thousand eight hundred pounds to my said wife, I direct my trustees to stand possessed of the whole of my residuary trust fund upon trust during the lifetime of my said wife to pay the income or the annual produce thereof of my said son, William Edward and from and after the death of my said wife in trust as to the whole of my residuary trust fund for my said son, William Edward, absolutely."

The testator was the owner of a considerable number of shares of stock in the Bibb Manufacturing Company, a Georgia corporation, which passed to his trustees at the time of his death and constituted the only source of United States income received by the trust in the taxable years. After the testator's death and prior to June 30, 1919, his widow, Ellen Muir, came to this country and took up her residence at Macon, Georgia, and, while retaining her British citizenship, remained there until her death in 1944. In 1919 the trustees directed Bibb to pay Ellen $4,000 annually out of the dividends on the Bibb stock. This amount was increased by order of the trustees to $6,000 in 1929 and to $8,000 in 1932, which amounts were equivalent at the prevailing rate of exchange to the annuity set forth in the will.

The company remitted to the trustees through a New York bank the annual dividends due the trust after deducting the withholding tax, the amount paid to Ellen, and other miscellaneous disbursements authorized by the trustees.

The trustees did not file any income tax returns for the years in question, but the taxpayer reported on his non-resident alien returns the total Bibb dividends received by the trustees less the amounts paid to Ellen, and also dividends on shares of stock owned by him individually, and paid the tax thereon; and Ellen reported the sums which were paid directly to her and paid the tax thereon.

The deficiencies in suit resulted from the Commissioner's determination that since all the income of the trust must be considered to have been received and distributed by the trustees, the income from sources within and without the United States should be apportioned for tax purposes between the beneficiaries in accordance with their respective interests under the will; and hence it was improper for the taxpayer to compute the amount of the tax due by him on the theory that the entire sum paid to the widow consisted of dividends from Bibb leaving him to report and pay the tax only on the balance of the Bibb income. The Commissioner's contention is that if the foreign and domestic income is ratably allocated to the two beneficiaries, the widow will receive income from foreign sources as well as income from Bibb, and pay a tax on the whole as a resident of the United States, and the taxpayer, as a non-resident, will be exempt from tax on the income from foreign sources, but will receive and pay a tax on a larger share of the income from Bibb than he reported. If this contention is approved, a portion of the foreign income, which has escaped taxation, becomes subject to income tax.

During the taxable years the trust estate received the aggregate sum of $407,769 in dividends from Bibb, and for those years the Commissioner determined deficiencies in the aggregate sum of $28,987.62. The correctness of the calculation of deficiencies on the Commissioner's theory depends upon the relative amounts of foreign and domestic income; but the amount of the income from foreign sources, although within the knowledge of the taxpayer, was not given to the Commissioner notwithstanding that the representatives of the taxpayer and of his estate were advised of their right to furnish the information. Under these circumstances the Commissioner allocated to the taxpayer all the income from the United States. The Tax Court held that this result was obviously wrong; but it agreed with the Commissioner's contention as to the allocation of the income between the beneficiaries. and being confronted with the same difficulty as the Commissioner as to the relative amounts of foreign and domestic income, held that $100 of the income within the United States should be allocated to Ellen and the remainder to the taxpayer, on the theory that the allocation should bear most heavily upon the party who had the burden of proof. See Cohan v. Commissioner, 2 Cir., 39 F.2d 540, 543-544. The court stated, however, in its opinion that this allocation was made with the understanding that if the estate of the taxpayer could demonstrate to the satisfaction of the Commissioner that the allocation should be more favorable to the taxpayer, the court would approve any allocation agreed to by the parties. The estate failed to furnish additional information and took this appeal.

The appellants rely upon the fact that the only income which the taxpayer received

from sources within the United States was income from Bibb, paid to him either as a stockholder of the corporation or as a beneficiary of the trust estate, and that he paid the tax thereon. It is therefore contended that the taxpayer had no tax liability for other income from Bibb which might have been paid to him under some theory of allocation but which he did not actually receive and had no right to receive. It is urged that there is no statute which requires an allocation·of foreign and domestic income between resident and non-resident beneficiaries of a trust estate, and that the analogies upon which the Tax Court rested its decision are based on statutes which have no bearing on a case like this.*

■■■ We are in agreement with the Tax Court's decision. All of the income of the trust estate, foreign and domestic, was payable to the trustees and although income to the amount of $8,000 was paid annually by Bibb directly to the widow, it was done at the order of the trustees and must be considered to have passed through their hands.** The will did not direct that specific income should be paid to specific beneficiaries and did not clothe the trustees with any authority in this respect. It merely directed that all the income be paid to the trustees and that they·should pay a specific amount out of the funds in their hands to the widow and the balance to the son. In the absence of a contrary direction, it must be assumed that the funds received by the trustees were to be mingled and then distributed in the prescribed amounts. The testator did not make and under the circumstances could not have made any provision with respect to such a controversy as the present; but it cannot be doubted that he did not intend to confer upon the trustees the power arbitrarily to make an allocation of income which would benefit one beneficiary at the expense of the other, as in the allocation of tax exempt income; and an attempt on the part of the trustee to make such an allocation would certainly have been enjoined by the British courts. It is not correct to say that the taxpayer had no right to receive a proportionate share of the income from the United States. It seems to us equally true that the will conferred no power upon the trustees to allocate the income to the disadvantage of the taxing power. They·were given the power to hold and distribute the income in the ordinary way, and since a normal distribution would require the proportional distribution of various kinds of income, it must be assumed that this was done.

■■■ It is important to bear in mind that the physical transfer of the funds from Bibb to the widow in this country upon the order of the trustees does not alter the fact that the funds belonged to the trustees just as if the money had been paid into their hands and had been deposited with income from other sources. It is true that for some tax purposes the income of a trust paid to a trustee retains its identity after it reaches the hands of the beneficiary. The trust, however, is a separate and distinct taxable person. Merchants' Loan & Trust Co. v. Smietanka, 255 U.S. 509, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305; and the trustee

---

* The controlling statutes are substantially similar, except as to rate, to Revenue Act of 1936, C. 690, 49 Stat. 1648, 26 U.S.C.A. §§ 211, 212:

"§ 211. *Tax on Nonresident Alien Individuals*

"(a) No United States business or office. There shall be levied, collected, and paid for each taxable year, in lieu of the tax·imposed by sections 11 and 12, upon the amount received, by every nonresident alien individual not engaged in trade or business within the United States * * * as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 10 per centum of such amount, * * *."

"§ 212. *Gross Income*

"(A) General rule. In the case of a nonresident alien individual gross income includes only the gross income from sources within the United States."

** Similarly an assignor of income must include it in his return even though it never actually passes through his hands, but is paid by his order directly to the assignee.

is required to file a tax return of the trust income, 26 U.S.C.A. § 142. In computing the net income of the trust the trustee is allowed a deduction for the amount of the income distributed to beneficiaries which then becomes taxable in their hands, 26 U.S.C.A. § 162(b); and, for the purpose of the normal tax, the beneficiary is allowed as a credit against net income his proportionate share of such amounts of interest received by the trustee as are exempt from taxation under Section 25(a), 26 U.S.C.A. § 163(b). But it will be seen that the right of the beneficiary to such an exemption is derived from the statute and not from the authority of the trustees to allocate the income.

There is no statute governing the pending case, but the practice of proportionate allocation is followed in analogous situations which are covered in part by statute. In the Estate of Richard E. Trasier v. Commissioner, 41 B.T.A. 228, the question arose as to whether an estate in making a return of income which consisted in part of taxable income and in part of tax exempt income was entitled to deduct the entire amount distributed to legatees. The estate contended that the entire amount was deductible; but the court sustained the contention of the Commissioner that since all of the income in excess of the amount for expenses was available for distribution, it must be assumed that the distribution came ratably from both kinds of income, and therefore so much of the distribution as came from tax exempt income could not be deducted from the gross taxable income of the estate under 26 U.S.C.A. § 162(c) of the Revenue Act of 1934, 48 Stat. 728.

The duty of a legatee to include in his income all distributions of income received from an estate, and his right, for the purpose of the normal tax, to a credit for "his proportionate share" of the tax exempt income of the estate, are prescribed by statute. See 26 U.S.C.A. §§ 162(b) and 163(b); but in the Trasier case, it was first necessary to determine how much of the distribution was tax exempt and this was done without reference to these statutes by assuming that the distribution was composed of both kinds of income in the same proportion as they existed in the total income of the estate.

In Grey v. Commissioner, 41 B.T.A. 234, affirmed 7 Cir., 118 F.2d 153, 141 A.L.R. 1113, one-half of the income from an estate was distributed under a will to charitable organizations and accordingly was not subject to income tax in their hands, while the remainder of the income was distributed to taxable legatees. The estate was allowed a deduction for depreciation of the trust property, and the question was how much of the allowance should be given to the taxable beneficiaries under Section 23(*l*) of the Revenue Act of 1934, 26 U.S.C.A. § 23(*l*), which provided that in the case of property held in trust, an allowable deduction for depreciation should be apportioned between the "income beneficiaries" and the trustee on the basis of the trust income allocable to each. The individual legatees interpreted the phrase "income beneficiaries" as if it read "taxable income beneficiaries" and claimed the entire allowance; but this claim was overruled. The court pointed out that the statute was passed so that beneficiaries of an estate might participate in the deduction for depreciation which was frequently of no tax advantage when confined to the estate; but held that Congress did not intend to create another inequity at the expense of the revenue authorities. The deduction was held to be allowable in equal shares to both classes of legatees.

See also J. Cornelius Rathborne v. Commissioner, 37 B.T.A. 607, affirmed 5 Cir., 103 F.2d 301; Georgia W. Rathborne v. Commissioner, 37 B.T.A. 936.

■ The appellants place much emphasis upon references to proportionate allocation in the statutes considered in these decisions and the lack of similar statutory provision applicable to the pending case. The contrast, however, is not of great significance. Congress must act in order that an income taxpayer may enjoy a specific deduction from gross income or a specific exemption from tax; and when income is divisible between an estate, on one hand, and beneficiaries, on the other, as in a trust, a statutory allocation of the benefit among the participants is appropriate. It is note-

worthy that in such cases the statutes provide expressly for ratable allocation between the estate and the beneficiaries, and it may be inferred that a like allocation amongst the beneficiaries themselves is contemplated; but this is not to say that the same just and equitable method should not be employed in the distribution and allocation of income for which neither Congress nor the creator of the trust has explicitly provided. No one denies that in the absence of specific direction to the contrary, fair and normal procedure requires proportionate allocation, and the burden must rest upon him who contends for something different in a particular case. We find no justification for an abnormal allocation of the income in the present controversy.

We think, however, in view of the lack of controlling decisions and the obvious incorrectness of the holding that the widow in this case received only $100 in income from sources in the United States, that the case should be reopened in the Tax Court; and that the appellants should be given a reasonable opportunity to produce testimony to show how much of the income of the estate came from sources outside the United States in the taxable years so that a correct calculation of the deficiencies may be made.

The judgment of the Tax Court is therefore affirmed and the case remanded to the Tax Court for further proceedings.

Affirmed and remanded.