ESTATE OF ERNST N. PETSCHEK, DECEASED, THOMAS H. PETSCHEK AND ASHER LANS, EXECUTORS, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9428–80.     Filed September 7, 1983.

*Asher B. Lans*, *Robert A. Manning*, and *Edgar J. Royce*, for the petitioners.
*David M. Brandes*, for the respondent.

OPINION

NIMS, *Judge*: Respondent determined a deficiency in the Federal income tax of petitioner's decedent for the taxable year 1975 of $98,222. Due to concessions, the issue for decision is the amount of gross income petitioner's decedent should have reported by virtue of having been during 1975 the income beneficiary of a simple trust earning only foreign source income.

All of the facts have been stipulated and are found accordingly.

Thomas H. Petschek resided at London, England, and Asher B. Lans resided at New York, N.Y., at the time the petition was filed.

For many years prior to 1975, petitioner's decedent, Ernst N. Petschek (hereinafter Petschek), was an American citizen residing in France. From January 1, 1975, to November 23, 1975, Petschek continued to be an American citizen residing in France. On November 24, 1975, he became a citizen of the Republic of France and thereby became and remained a nonresident alien for the balance of the calendar year 1975.

In December 1955, decedent's father established an inter vivos trust at New York, N.Y. Upon the death of decedent's father, this trust was divided into two equal parts, each of which became a separate trust. During 1975, Petschek was the sole income beneficiary of one of these trusts, the Ernest Petschek Trust 5A (Trust 5A).

The trustee of Trust 5A was required to distribute its net income "at least annually" to Petschek. Further, the trustee had complete discretion to invade the corpus of the trust for the use of Petschek, his spouse, or issue. Finally, Petschek possessed a testamentary special power of appointment over the corpus of Trust 5A.

During 1975, Petschek's cousin was the trustee of Trust 5A.

In 1975, Trust 5A was a simple trust within the purview of subpart B, part I, subchapter J, chapter 1, of the Internal Revenue Code of 1954.

Trust 5A was a calendar year, cash basis taxpayer. During the calendar year 1975, Trust 5A had the following income and deductible expenses:

| | |
|---|---|
| Interest | $151,605 |
| Dividends (net of foreign withholding taxes and bank commissions) | 877 |
| | 152,482 |
| Expenses | (67) |
| Excess of receipts over deductible expenses | 152,415 |

From January 1, 1975, to November 23, 1975, Trust 5A had the following income and deductible expenses:

| | |
|---|---:|
| Interest ................................................. | [1]$135,840 |
| Dividends (net of foreign withholding taxes and bank commissions) .................. | [2]877 |
| | 136,717 |
| Expenses ............................................... | (60) |
| Excess of receipts over deductible expenses ................................................ | 136,657 |

In 1975, Trust 5A had no income from sources within the United States and no part of its income was effectively connected with the conduct of a trade or business in the United States.

Between January 1, 1975, and November 23, 1975, inclusive, the trustee distributed $132,841 from Trust 5A to Petschek.

Petschek was alive for all of 1975. He reported his 1975 income on the cash basis using a calendar year. On his 1975 nonresident alien income tax return, Petschek reported no income from Trust 5A.

In his statutory notice of deficiency, respondent determined that Petschek was required to report $136,547 as taxable income from Trust 5A in 1975. This figure was calculated by prorating the entire amount of income (less expenses) realized by Trust 5A in calendar year 1975 over the number of days in 1975 when Petschek was an American citizen.

On brief, respondent contends that Petschek was required to report $136,657 as taxable income from Trust 5A in 1975. This figure represents the amount of income (less expenses) actually realized by Trust 5A between January 1, 1975, and November 23, 1975, inclusive. Alternatively, respondent contends that decedent was required to report $132,841 as taxable income from Trust 5A in 1975. This alternative figure represents the amount of money the trustee distributed to Petschek during the portion of 1975 when Petschek was an American citizen.

Petitioner, on the other hand, argues that Petschek did not receive any taxable income from Trust 5A while Petschek was an American citizen in 1975. Consequently, petitioner con-

---

[1]For purposes of the stipulation, the parties treated the interest earned by Trust 5A in 1975 as realized pro rata over the entire year.

[2]All dividends realized by Trust 5A in 1975 were realized prior to Nov. 23, 1975.

tends, decedent did not have to report any income from Trust 5A in 1975.

An American citizen who resides abroad for the entire taxable year is generally[3] taxable on his worldwide income. Sec. 1.1–1(b), Income Tax Regs.; *Cook v. Tait*, 265 U.S. 47 (1924); *Cinelli v. Commissioner*, 502 F.2d 695, 697 (6th Cir. 1974), affg. a Memorandum Opinion of this Court; *Filler v. Commissioner*, 74 T.C. 406, 410 (1980).[4] Conversely, an individual who is a nonresident alien throughout the taxable year is taxable only on gross income derived from sources within the United States or gross income which is effectively connected with the conduct of a trade or business within the United States. Sec. 872(a).

A beneficiary of a trust is deemed to be engaged in a trade or business within the United States if the trust is engaged in a trade or business within the United States. Sec. 875(a); *Di Portanova v. United States*, 231 Ct. Cl. ___, 690 F.2d 169, 172 (1982).[5] Similarly, a beneficiary receives income derived from sources within the United States to the extent that the trust receives income from sources within the United States. Sec. 652(b); sec. 1.652(b)-(1), Income Tax Regs.; *Bence v. United States*, 84 Ct. Cl. 605, 18 F. Supp. 848 (1937); *Isidro Martin-Montis Trust v. Commissioner*, 75 T.C. 381 (1980); *Muir v. Commissioner*, 10 T.C. 307 (1948), affd. and remanded 182 F.2d 819 (4th Cir. 1950).

Applying the above principles to the instant case, it is clear that if Petschek had been alive and an American citizen throughout 1975, he would have been taxable on the full amount of distributable income (to the extent of distributable net income) received by Trust 5A in 1975. Sec. 652(a). On the other hand, since Trust 5A engaged in no trade or business within the United States and received no income from sources within the United States in 1975, if Petschek had been alive

---

[3]There are exceptions, none germane to the issues here. See, e.g., sec. 911. (Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year in issue. All references to Rules are to the Tax Court Rules of Practice and Procedure.)

[4]See also 3 B. Bittker, Federal Taxation of Income, Estates and Gifts, par. 65.1, at 65–2 (1981).

[5]See also *de Krause v. Commissioner*, T.C. Memo. 1974–291.

and a nonresident alien throughout 1975, he would have been taxable on none of Trust 5A's distributable income.

Section 1.871–13(a), Income ·Tax Regs., requires that when an individual changes his status from nonresident U.S. citizen to nonresident alien during the taxable year, the individual's taxable year is to be divided into two separate periods:[6] During the first period, he is taxable under rules applicable to U.S. citizens; during the second period, which commences on the day U.S. citizenship is renounced, the individual is taxable under rules applicable to nonresident aliens.[7]

Section 1.871–13(c), Income Tax Regs., further provides:

> (c) *Abandonment of U.S. citizenship or residence.* Income from sources without the United States which is not effectively connected with the conduct by the taxpayer of a trade or business in the United States is not taxable if received by an alien individual while he is not a resident of the United States, even though he earns the income earlier in the taxable year while he is a citizen or resident of the United States. However, income from sources without the United States which is not effectively connected with the conduct by the taxpayer of a trade or business in the United· States is taxable if received by an individual while he is a citizen or resident of the United States, even though he abandons his U.S. citizenship or·residence after its receipt and before the close of the taxable year.

The question we must decide therefore is how much, if any, of Trust 5A's income Petschek "received," within the meaning of section 652 and section 1.871–13(c), Income Tax Regs., while he was still an American citizen in 1975. It is only on any such amount of income that Petschek is taxable.[8]

---

[6]These two separate periods are not separate taxable years. Thus the usual taxable year of the individual is not terminated by his change in status. *Nico v. Commissioner*, 565 F.2d 1234, 1236 (2d Cir. 1977), affg. on this point and revg. on another point 67 T.C. 647 (1977); *More v. Commissioner*, 66 T.C. 27 (1976), affd. without published opinion 562 F.2d 38 (2d Cir. 1977); *Simenon v. Commissioner*, 44 T.C. 820, 832–833 (1965); *Klaas v. Commissioner*, 36 T.C. 239 (1961).

[7]Sec. 1.871–13, Income Tax Regs., does not address the special situation of expatriation where one of its principal purposes is the avoidance of U.S. taxation. In such a case, sec. 877 governs and provides different rules. See *Di Portanova v. United States*, 231 Ct. Cl. ___, 690 F.2d 169 (1982); *Kronenberg v. Commissioner*, 64 T.C. 428 (1975). In the instant case, respondent makes no argument that Petschek abandoned his U.S. citizenship with a principal purpose of avoidance of U.S. taxation. Accordingly, sec. 877 is not applicable.

[8]Sec. 894 provides that income of any kind, to the extent required by any treaty obligation of the United States, shall not be included in gross income and shall be exempt from taxation under subtitle A of the Code. See *Simenon v. Commissioner, supra* at 834. See also sec. 7852(d). However, the parties have raised and we are aware of no treaty provisions at variance with the provisions of the Code and regulations discussed herein. See convention between the United States of America and the French Republic with respect to Taxes on

Respondent argues that the conduit theory of trust taxation requires that Petschek be treated as receiving income from Trust 5A at the moment Trust 5A received income. He analogizes the instant situation to cases where a trust beneficiary either renounces an interest in a trust or dies prior to the end of the trust's taxable year. Further, respondent points to cases where, despite the apparently unambiguous language of the Code that an entity's full-year income is includable in the income of a taxpayer, an allocation of such income has been made for change-of-status taxpayers.[9]

Petitioner, on the other hand, contends that a beneficiary of a trust cannot receive trust income until the end of the trust's taxable year since it is only at that time that the trust's distributable net income for the year can be determined.

The facts present a case of novel impression.[10] We begin with an examination of general principles of trust taxation.

Income and Property, 19 U.S.T. (Part 4) 5280, T.I.A.S. No. 6518 (signed July 28, 1967) 1968–2 C.B. 691; Protocol to the Convention between the United States of America and the French Republic with respect to Taxes on Income and Property of July 28, 1967, 23 U.S.T. (Part 1) 20, T.I.A.S. No. 7270 (signed Oct. 12, 1970), 1972–1 C.B. 438. See also Protocol to the Convention between the United States of America and the French Republic with respect to Taxes on Income and Property of July 28, 1967, as Amended by the Protocol of Oct. 12, 1970, 30 U.S.T. (Part 4) 5109, T.I.A.S. No. 9500 (signed Nov. 24, 1978), 1979–2 C.B. 411. Accordingly, we confine our discussion to the Internal Revenue Code.

[9]These last cases are *Marsman v. Commissioner*, 18 T.C. 1 (1952), affd. in part and revd. in part 205 F.2d 335 (4th Cir. 1953), and *Gutierrez v. Commissioner*, 53 T.C. 394 (1969), affd. per curiam (D.C. Cir., Dec. 9, 1971). In *Marsman*, the sole shareholder of a foreign personal holding company was held taxable on a deemed dividend from the corporation, under the predecessor of sec. 551, only in the prorated amount of corporate income allocable to the portion of the taxable year during which she was a U.S. resident. In *Gutierrez*, the Tax Court adopted the Fourth Circuit's holding in *Marsman* on similar facts. While of some relevance to, and indeed arguably supportive of, the result we reach herein, it is our opinion that these two cases are primarily informed by the policies lying behind the foreign personal holding company provisions. Accordingly, we deem it inadvisable to attempt to draw too close an analogy between the situations in *Marsman* and *Gutierrez* and the situation here.

[10]In an article written prior to this litigation, Professor Harvey P. Dale of the New York University School of Law argues that a rule allowing the beneficiary of a simple trust in a change of status year to treat his distributable net income as received entirely on the last day of the taxable year would be preferable to a rule treating distributable net income either as received pro rata over the taxable year or received when earned by the trust. Professor Dale concludes, however, that based on *Marsman v. Commissioner, supra,* and *Gutierrez v. Commissioner, supra,* "the prorating approach must also be viewed as viable" and that legislation generally adopting the yearend approach may be necessary. Dale, "Tax Accounting for Foreign Persons," 37 Tax L. Rev. 275, 315, 322 (1982).

On the other hand, another commentator has stated:

"If the beneficiary changes his status to or from that of a nonresident alien during the taxable year, the foreign source income of the trust or estate which is distributed, or required to be distributed, to the beneficiary is nontaxable only during the period he is a

Generally, when a trust is required to distribute all of its income currently, the scheme of the Code is to treat the amount so distributable as the income of the beneficiary and not the trust. *Freuler v. Helvering*, 291 U.S. 35, 41 (1934).[11] This is accomplished by allowing the trust a deduction (to the extent of its distributable net income (hereinafter DNI) for all income it is required to currently distribute; see sec. 651; and to include this deductible amount currently in the gross income of the beneficiary, whether or not the income is currently distributed. See secs. 651 and 652.[12]

---

nonresident alien.[41]

"[41]Reg. 1.872–1(a)(2)."

Farmer, "Nonresident Alien Beneficiaries: Tax Responsibilities of the Fiduciary," 111 Trusts & Estates 280, 283 (1972). The regulation cited by Farmer is the predecessor of section 1.871–13, Income Tax Regs. (adopted by T.D. 7332, 1975–1 C.B. 204 (Dec. 20, 1974)), and provided:

"(a) *Change of status.*—Income received by a resident alien from sources without the United States is taxable although he may become a nonresident alien subsequent to its receipt and before the close of the taxable year. Conversely, income received by a nonresident alien from sources without the United States is not taxable although he may become a resident alien subsequent to its receipt and before the close of the taxable year."

Although neither the parties nor the commentators have cited *Goldring v. Commissioner*, 36 B.T.A. 779 (1937), that case dealt with the grantor of what sec. 1.651(a)-1, Income Tax Regs., now calls a complex trust, who changed from being a resident alien to a nonresident alien during the taxable year. (Sec. 1.651(a)-1, Income Tax Regs., provides, in relevant part, that "A trust to which section 651 applies is referred to * * * as a 'simple' trust. Trusts subject to section 661 are referred to as 'complex' trusts." The concept of a complex trust is not relevant here.) In *Goldring*, the Board of Tax Appeals found the grantor taxable on the income distributed by the trust to his spouse while he resided in the United States. While *Goldring* seems somewhat relevant, we believe it distinguishable from the instant case because (1) Petschek was not the grantor of Trust 5A, (2) Trust 5A was not a grantor trust, and (3) Trust 5A was not a complex trust.

[11]In *United California Bank v. United States*, 439 U.S. 180, 199 (1978), the Supreme Court expressly reaffirmed this basic premise from which the holding in *Freuler v. Helvering*, 291 U.S. 35 (1934), proceeds.

[12]Secs. 651 and 652 provide:

SEC. 651. DEDUCTION FOR TRUSTS DISTRIBUTING CURRENT INCOME ONLY.

(a) DEDUCTION.—In the case of any trust the terms of which—

(1) provide that all of its income is required to be distributed currently, and

(2) do not provide that any amounts are to be paid, permanently set aside, or used for the purposes specified in section 642(c) (relating to deduction for charitable, etc., purposes),

there shall be allowed as a deduction in computing the taxable income of the trust the amount of the income for the taxable year which is required to be distributed currently. This section shall not apply in any taxable year in which the trust distributes amounts other than amounts of income described in paragraph (1).

(b) LIMITATION ON DEDUCTION.—If the amount of income required to be distributed currently exceeds the distributable net income of the trust for the taxable year, the deduction shall be limited to the amount of the distributable net income. For this purpose, the computation of distributable net income shall not include items of income which are not

Two principles of trust taxation are especially important in this case. The first is that a beneficiary does not realize taxable income from a simple trust based on the fact that the beneficiary may actually or constructively *receive* such income. *DeBrabant v. Commissioner*, 34 B.T.A. 951, 955–956 (1936), affd. 90 F.2d 433 (2d Cir. 1937). Rather, the beneficiary realizes income because the trust realizes income. As the Supreme Court stated in *Freuler v. Helvering, supra* at 42, "For the purpose of imposing the tax the act regards ownership, the right of property in the beneficiary, as equivalent to physical possession. The test of taxability to the beneficiary is not receipt of income, but the present right to receive it."

The difference between the constructive receipt doctrine and the method under which beneficiaries of simple trusts are taxed was illustrated in *DeBrabant v. Commissioner, supra.* There, the trustee withheld certain gross receipts received by the trust under the erroneous belief that the moneys constituted principal and not income.[13] In a later year, a State court

---

included in the gross income of the trust and the deductions allocable thereto.

SEC. 652. INCLUSION OF AMOUNTS IN GROSS INCOME OF BENEFICIARIES OF TRUSTS DISTRIBUTING CURRENT INCOME ONLY.

(a) INCLUSION.—Subject to subsection (b), the amount of income for the taxable year required to be distributed currently by a trust described in section 651 shall be included in the gross income of the beneficiaries to whom the income is required to be distributed, whether distributed or not. If such amount exceeds the distributable net income, there shall be included in the gross income of each beneficiary an amount which bears the same ratio to distributable net income as the amount of income required to be distributed to such beneficiary bears to the amount of income required to be distributed to all beneficiaries.

(b) CHARACTER OF AMOUNTS.—The amounts specified in subsection (a) shall have the same character in the hands of the beneficiary as in the hands of the trust. For this purpose, the amounts shall be treated as consisting of the same proportion of each class of items entering into the computation of distributable net income of the trust as the total of each class bears to the total distributable net income of the trust, unless the terms of the trust specifically allocate different classes of income to different beneficiaries. In the application of the preceding sentence, the items of deduction entering into the computation of distributable net income shall be allocated among the items of distributable net income in accordance with regulations prescribed by the Secretary or his delegate.

(c) DIFFERENT TAXABLE YEARS.—If the taxable year of a beneficiary is different from that of the trust, the amount which the beneficiary is required to include in gross income in accordance with the provisions of this section shall be based upon the amount of income of the trust for any taxable year or years of the trust ending within or with his taxable year.

"Income" as used in secs. 651 and 652 means the amount of income determined under the trust's governing instrument and applicable local law. Sec. 643(b). It is to be distinguished from "distributable net income," which is defined in sec. 643(a).

[13]Comment b. to sec. 182, Restatement, Trusts 2d (1959), states in part: "the trustee can properly withhold income for his protection where there is reasonable doubt as to the

determined that the withheld amounts were in fact income and directed distribution. Although the beneficiary may not have been in constructive receipt of the trust income until after the State court adjudication, the Board of Tax Appeals held that the beneficiary had had a present right to receive the withheld income in the year the moneys were first received by the trust. Accordingly, the beneficiary was taxable on the trust's withheld income in the earlier year. Similarly, in *Estate of Dula v. Commissioner*, 23 T.C. 646 (1955), affd. sub nom. *Polt v. Commissioner*, 233 F.2d 893 (2d. Cir. 1956), the trustee withheld certain currently distributable income until in a subsequent year he received an approval of his accounting from the Surrogate's Court. The Tax Court held that the beneficiary was taxable on the income of the trust in the year the trust received it. The Second Circuit affirmed the Tax Court, rejecting the beneficiary's argument that he lacked unfettered control of the trust's income in the year the trust received it. See also *United States v. Higginson*, 238 F.2d 439 (1st Cir. 1956); *Estate of Bruchmann v. Commissioner*, 53 T.C. 403 (1969) (Court reviewed).

*Grant v. Commissioner*, 11 T.C. 178 (1948), affd. 174 F.2d 891 (5th Cir. 1949), illustrates not only the above principle of trust taxation, but also a second principle, namely, that the beneficiary of a simple trust realizes income simultaneously with the trust's realization of income throughout its taxable year. Put another way, the taxable event to the beneficiary—the attaching of the present right to receive income—occurs daily as the trust realizes income, and does not occur only on the last day of the trust's taxable year.

In *Grant*, the taxpayer was the income beneficiary of a testamentary trust established July 31, 1943. Under the terms of the trust, the trustees were to pay the taxpayer at the end of each calendar year all or any part of the trust's net income she elected. Income not withdrawn would be added to corpus. The taxpayer never elected to receive any income from the trust and in June 1945, renounced her income interest in the trust. The Commissioner determined that the taxpayer was taxable

amount of income payable to the beneficiary." See also G. Bogert, Law of Trusts and Trustees, sec. 814, at 285–287 (rev. 2d ed. 1981); 2 A. Scott, Law of Trusts, sec. 182, at 1466–1467 (3d ed. 1967).

in 1943 and 1944 on the net income received by the trust in those years and was taxable in 1945 on the net income received by the trust in 1945 prior to the renunciation.

The Tax Court in *Grant* sustained the Commissioner's determination, stating:

The trust income was available to her [the beneficiary] each year upon request until she renounced her right thereto. She had the "realizable" economic gain necessary to make the income taxable to her. The trust provision "at the end of each calendar year" relates to the time when the trustees should pay the beneficiary the trust income, and not to the time of election as contended by petitioner. [11 T.C. at 181.]

Petitioner argues that *Grant* is distinguishable and that *Hay v. United States*, 263 F. Supp. 813 (N.D. Tex. 1967), and *Letts v. Commissioner*, 84 F.2d 760 (9th Cir. 1936), affg. 30 B.T.A. 800 (1934), support a holding that a beneficiary includes the income of a simple trust only on the last day of the trust's taxable year. We disagree.

First, we do not find *Grant* distinguishable. Second, *Hay v. United States, supra,* itself is distinguishable as involving a complex trust. Third, *Letts v. Commissioner, supra,* merely stands for the proposition that it is irrelevant that a simple trust distributes money to its beneficiaries before it earns income during the taxable year, since it is the receipt of income by the trust and not the event of distribution which triggers taxation in the beneficiary.

Petitioner contends that since DNI is ordinarily calculated on the basis of the trust's taxable year, the beneficiary cannot know the trust's DNI until the end of the trust's taxable year. Thus, petitioner argues, the trust income is received for tax purposes only on the last day of the trust's taxable year. In support of this argument, petitioner points out that an interim calculation of DNI during the trust's taxable year may exceed DNI measured at the end of the trust's year if after the interim calculation the trust incurs losses or expenses chargeable to the income beneficiary.

But it does not logically follow that simply because DNI is usually calculated at the end of a trust's taxable year, it is only included in the gross income of the beneficiary on the last day of the trust's taxable year. We see no reason why interim calculations of both DNI and income distributable under State law cannot be made daily during the trust's taxable year.

Indeed, such an interim calculation of distributable income was in fact made in *Grant v. Commissioner, supra,* and would, in effect, be required under section 1.652(c)–3, Income Tax Regs., in a case where the existence of a beneficiary which is not an individual terminates prior to the end of a simple trust's taxable year.

In addition, the fact that interim distributable income or DNI may exceed distributable income or DNI measured at the end of the trust's taxable year does not mean that there is no distributable income or DNI until the last day of the trust's taxable year. (In such a case, a downward adjustment of interim distributable income or DNI may be necessary so as not to overtax the beneficiary; but we express no opinion on whether such an adjustment would be necessary since in the instant case Trust 5A's distributable income and DNI on December 31, 1975, clearly exceeded distributable income and DNI measured on an interim basis on November 23, 1975.)

Finally, petitioner argues that section 652(c) implies an end-of-year inclusion rule for the trust income. That subsection provides that when the taxable year of a beneficiary differs from that of the trust, the beneficiary must include in his income the amount of trust income for the taxable year or years of the trust ending within or with the beneficiary's taxable year. The case before us does not involve such different taxable years. Unquestionably, however, there is inherent in section 652(c) the implicit assumption that the respective statuses of the trust and the beneficiary will not have changed from year to year, and the section simply does not deal with atypical situations such as, for example, the situation where no trust year ends with or within the taxable year of a beneficiary who dies. Admittedly, section 652(c) is conceptually at odds with the "moment of receipt" concept articulated in *Freuler v. Helvering, supra,* but we view provisions such as section 652(c)[14] as legislative rules of convenience limited to different taxable year situations which should not be expanded to cover other cases, such as the one before us, where an analogy would be inexact at best.

---

[14]See also secs. 662(c) (estates and complex trusts); 706(a) (partnerships); 551(b) (foreign personal holding companies); and 951(a) (controlled foreign corporations).

In any event, whether or not in a change-of-status case a beneficiary who employs a different taxable year from his trust would be required to include the trust income daily as realized by the trust is an issue we need not deal with here. But cf. *Schimberg v. United States*, 245 F. Supp. 616 (N.D. Ill. 1965), affd. 365 F.2d 70 (7th Cir. 1966), where the courts upheld income bunching in decedent beneficiary's last taxable year when he and two trusts employed different taxable years.

Having thus concluded that the beneficiary of a simple trust realizes taxable income simultaneously with the trust's realization of income, we now turn to the language of section 1.871–13(c), Income Tax Regs. That regulation provides that foreign source income "received" before the abandonment of U.S. Citizenship is taxable to the subsequent expatriate. Conversely, foreign source income "earned" while an American citizen but received while a nonresident alien is not taxable.

It is our view that under the foregoing analysis and section 1.871–13(c), Income Tax Regs., the income of the simple trust in question should be taxed to Petschek, on the same basis as it would have been had he owned the trust assets directly.[15] Thus, Petschek's share of the income is to be considered his property from the moment of its receipt by the trust (*Freuler v. Helvering, supra*), regardless of whether it might have been distributed to him, and thus "received" by him, after the date upon which he surrendered his U.S. citizenship. By the same token, had the trust "earned" income (e.g., accrual interest income) during Petschek's period of U.S. citizenship, but actually received the income after such citizenship ended, Petschek would not, in turn, be deemed to have received such income as U.S. taxable income.[16]

The parties have computed the figure referred to above as $136,657. This amount exceeds the amount determined in the deficiency notice by $110. Under section 6214(a), we may

---

[15]As already noted, the trust is a simple trust under sec. 1.651(a)–1, Income Tax Regs., and both the trust and Petschek are cash basis taxpayers. We need not decide how, if at all, income from a complex trust would be taxed, or the tax results if either Petschek or the trust were accrual basis taxpayers.

[16]The parties have stipulated that "from January 1, 1975, to November 23, 1975," Trust 5A had $60 of deductible expenses. The nature of the expenses is not disclosed and since the parties have stipulated the period to which they are allocable we are not required to decide the proper method of allocation. See Dale, *supra* note 10, at 304.

determine an increased deficiency only if respondent formally pleads an increased deficiency. *Moise v. Burnet*, 52 F.2d 1071, 1073 (9th Cir. 1931), revg. 13 B.T.A. 525 (1928); *Koufman v. Commissioner*, 69 T.C. 473, 475–476 (1977). Respondent has not pleaded an increased deficiency. Accordingly, we sustain the determination in the deficiency notice.

Since petitioner has conceded all other adjustments,

*Decision will be entered for the respondent.*